DECISION.
{¶ 1} Following a jury trial, defendant-appellant Cheickne Traore was convicted of trafficking[1] and possession[2] of marijuana, and was sentenced to concurrent five-and one-year sentences respectively. Traore now appeals, arguing that the evidence used to convict him was the product of an unlawful stop and seizure; that the sufficiency and weight of the evidence did not support his conviction; and that the trial court erred in imposing the maximum sentences.
 {¶ 2} Traore's assignments of error are meritless and we affirm the findings of guilt, but we sua sponte remand the case for resentencing because, under State v. Cabrales,[3] multiple sentences were improperly imposed when trafficking in marijuana[4] and possession of marijuana[5] were allied offenses of similar import. In this respect, our judgment is stayed pending the outcome of the Ohio Supreme Court's decision in Cabrales.
 I. Traore Fit the Description {¶ 3} On August 25, 2005, the Cincinnati Police received a tip from a confidential informant that there was a man on Twelfth Street in a black Honda Civic who possessed marijuana. Officer John Mendoza testified that the informant's tip indicated that the suspect was a short black male with a dark complexion, and that he was wearing a black T-shirt and blue-jean shorts. Based on the informant's tip, Cincinnati officers located the Civic and surveilled the area. While surveilling the area, Officer Mendoza observed Traore approach the vehicle and noted that Traore matched the description given by the informant. *Page 3 
 {¶ 4} Traore then retrieved a black bag from the Civic, raised the hood, walked towards the passenger side of the engine compartment, and then closed the hood of the Civic. After Traore closed the hood, Mendoza noticed that Traore was no longer carrying the black bag. Based on this observation, it was apparent that Traore had placed the black bag in the engine compartment — certainly a suspicious storage space. Traore then drove away, with Mendoza following. Mendoza testified that Traore almost immediately "zipped" the Civic to the curb and stopped. Traore's beeline for the curb took place so quickly that Mendoza never had time to activate the overhead lights of his cruiser.
 {¶ 5} Mendoza approached the Civic and asked Traore for his driver's license, but in response Troare produced an identification document purporting to belong to "Mahamadou Tandia." After scrutinizing the identification offered by Traore, Mendoza quickly concluded that Traore was not the person pictured on the identification card. Soon after, two more officers arrived — Officers Bley and Gober. Mendoza later testified that his suspicion had been further aroused because it appeared that Traore was attempting to hide his true identity from the police.
 {¶ 6} Officer Gober then approached and asked Traore to get out of the vehicle. Gober asked Traore if he "had anything on him," and Traore replied that he had some marijuana in his possession. Traore was then handcuffed, arrested, and placed in the back of the police cruiser. Officers then searched the Civic and, under the hood, found the black bag that Traore had previously moved from the passenger compartment to the engine compartment. The black bag contained more marijuana and a small bag of the drug ecstasy. On these facts the trial court denied Traore's suppression motion, and a jury later found Traore guilty. *Page 4 
 II. The Suppression Motion {¶ 7} In Traore's first assignment of error, he argues that his suppression motion should have been granted because the initial stop and ensuing search of his vehicle were unlawful. Not so.
 {¶ 8} The Fourth and Fourteenth Amendments to the United States Constitution generally prohibit a state from conducting warrantless searches and seizures. Unless an exception applies, warrantless searches are per se unreasonable.[6] One exception has been enunciated by the United States Supreme Court in Terry v. Ohio, where a citizen's right to be free from unreasonable searches was balanced against the need to protect the police and the public.[7] The Fourth Amendment's protection against unreasonable searches and seizures extends to investigative traffic stops, but such a stop is permissible if it is supported by reasonable suspicion.[8] Courts evaluate the totality of the circumstances in determining whether an investigative stop was reasonable.[9] Courts may consider both training and experience in determining whether an officer's inferences and deductions led to reasonable suspicion: "A review of the totality of the circumstances is based on the objective observations and information of the officer along with the inferences and deductions made by a trained law enforcement officer that the particular individual is engaged in wrongdoing." Another exception is that the police may conduct a warrantless search incident to a lawful arrest. If the arrest is unlawful, as where the police do not possess probable cause to make the arrest, the search is also unlawful.[10] *Page 5 
In this case, Mendoza's suspicion to stop grew into probable cause to arrest and resulted in a proper search incident to a lawful arrest.
 {¶ 9} Mendoza testified that he saw Traore retrieve a black bag from the vehicle, that he then opened the hood and then shortly after closed the hood, and that after the hood was closed, Traore no longer possessed the bag. Mendoza testified that he did not actually see Traore place the bag under the hood because the hood had obstructed the view. But Mendoza testified that he had seen other suspects exhibit similar odd behavior in attempting to hide drugs: "I have made busts before where people have hidden stuff up under their car. To go to a front of the car, put something under the hood of the car, close the hood, go back into [the] car and drive off, I don't know of many people that leave anything in there. A lot of dealers believe when officers search a car, they are just searching the driver's area, rear-seat-passenger area, and maybe the trunk, and that [officers] don't think about looking up under the hood. Underneath the hood is an area that really isn't hit a whole lot by officers. And that's how a lot of the drugs come in." Likewise, Mendoza testified that the area where he observed Traore was a "problem area" insofar as drug trafficking, drug use, and gun control.
 {¶ 10} As we have previously explained, "police have probable cause to conduct a search for contraband when detailed information provided to them by a confidential but reliable informant is subsequently corroborated, in some significant combination, with respect to the name or physical description of a suspect, the location of the illegal sale, the time of the sale, the description of the automobile driven by the suspect or the car's license plate numbers."[11] *Page 6 
 {¶ 11} Though we hesitate to say that probable cause to search existed at the outset, we are convinced that the tipster's corroborated description, the drug activity in the surrounding area, and Traore's odd behavior in storing a black bag in the engine compartment and in driving erratically, along with Mendoza's inferences and deductions, at a minimum constituted the reasonable suspicion necessary to constitutionally make a brief investigative detention. During that detention, Traore, by producing identification belonging to someone else, further heightened Mendoza's suspicion that criminal activity was afoot and buttressed Mendoza's decision to investigate further. Finally, once Traore stepped out of the vehicle and admitted that he had some marijuana on him, the officers were able to make a lawful arrest. And because the search of the vehicle was incident to a lawful arrest, Traore's suppression motion was properly denied.
 III. Sufficiency and Weight of the Evidence {¶ 12} Traore also argues that his conviction was against the sufficiency and the weight of the evidence. In determining whether a conviction is supported by sufficient evidence, this court is not permitted to weigh the evidence; instead we must view all the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt.[12] But when reviewing the manifest weight of the evidence, this court sits as a "thirteenth juror."[13] We review the record, weigh the evidence, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[14] *Page 7 
 {¶ 13} Traore argues that his conviction for trafficking in and possession of marijuana should be overturned because "no one actually saw him place the bag of marijuana under the hood." As we have noted, Officer Mendoza testified that drug dealers often hid contraband inside the engine compartment; and Mendoza also testified that he saw Traore retrieve a bag from inside the car, open the hood, and close the hood, and that once the hood was closed, the bag had disappeared. The jury was entitled to weigh Mendoza's testimony, and after our review of the record, we conclude that a rational trier of fact could have determined that Traore had possessed and trafficked in marijuana — the evidence was sufficient. We further conclude that the jury did not lose its way and create a manifest miscarriage of justice. Traore's assignment of error challenging the sufficiency and the weight of the evidence is overruled.
 IV. Sentencing {¶ 14} In Traore's final assignment of error, he argues that his sentence was excessive and was based on factors outside the guidelines. Traore was convicted of a third-degree felony, carrying a sentence of one to five years, and a fifth-degree felony, carrying a sentence of six to twelve months. As we have stated on numerous occasions, "[t]rial courts have full discretion to impose a sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."[15] Traore received the maximum sentences allowed by statute, and because the imposed sentences were within the statutory ranges, Traore's assignment of error is not well taken. *Page 8 
 {¶ 15} Finally, on our own motion, we vacate the sentences and remand the case to the trial court for resentencing in accordance with our decision in State v. Cabrales.[16] Under Cabrales, the commission of trafficking under R.C. 2925.03(A)(2) also results in possession, a violation of R.C. 2925.11(A);[17] and because Traore's offenses were allied and of similar import, the trial court must impose a single sentence for either trafficking in marijuana[18] or possession of marijuana.[19]
 {¶ 16} In conclusion, we must set aside the multiple sentences imposed for the allied offenses and remand this case for the trial court to sentence Traore under either R.C. 2925.11(A) or R.C. 2925.03(A)(2). In this respect, our judgment is stayed pending the outcome of the Ohio Supreme Court's decision in Cabrales. But in all other respects, the judgment of the trial court is affirmed.
Judgment accordingly.
HILDEBRANDT and HENDON, JJ., concur.
[1] R.C. 2925.03(A)(2).
[2] R.C. 2925.11A.
[3] 1st Dist. No. C-050682, 2007-Ohio-857, discretionary appeal accepted, 114 Ohio St.3d 1410, 2007-Ohio-2632,867 N.E.2d 844.
[4] R.C. 2925.03(A)(2).
[5] R.C. 2925.11A.
[6] Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
[7] Id.
[8] See United States v. Arvizu (2002), 534 U.S. 266, 273,122 S.Ct. 744; United States v. Jacob (C.A.6, 2004), 377 F.3d 573; State v.Bacher, 170 Ohio App.3d 457, 2007-Ohio-727, 876 N.E.2d 864, ¶ 8.
[9] See State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.
[10] See State v. Johnson (Feb. 25, 2000), 1st Dist. No. C-990042.
[11] State v. Colbert (Mar. 7, 1990), 1st Dist. No. C-880471.
[12] See State v. Martin (1983), 20 Ohio App.3d 172,484 N.E.2d 717.
[13] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[14] Id.
[15] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470.
[16] See Cabrales, supra.
[17] See, e.g., State v. Hart, 1st Dist. No. C-060686,2007-Ohio-5740, ¶ 44.
[18] R.C. 2925.03(A)(2).
[19] R.C. 2925.11(A). *Page 1