DECISION AND JUDGMENT ENTRY
{¶ 1} Jeramy Huckleberry appeals his possession of drugs and trafficking in drugs convictions and sentences in the Scioto County Common Pleas Court. On appeal, Huckleberry contends that the wording of the jury's guilty verdict forms did not support the trial court's convictions for felonies of the first degree. Because the wording of the verdict forms supported a conviction for a misdemeanor of the third degree and a conviction for a felony of the fifth degree, we agree. Huckleberry next contends that possession of drugs and trafficking in drugs are allied offenses of similar import. Because we have already decided this issue in another case, we disagree. Huckleberry next contends that the verdicts were against the manifest weight of the evidence. Because we cannot *Page 2 
say, in resolving conflicts in the evidence, that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions of possession of drugs and trafficking in drugs must be reversed and a new trial granted, we disagree. Finally, Huckleberry contends that his trial counsel was ineffective for failing to object to the "felonies of the first degree" findings and the lack of an allied offenses finding. Because the failure to object to these findings did not forfeit Huckleberry's right to appeal this issue, and because the lack of an allied offenses finding did not prejudice Huckleberry, we disagree.
 {¶ 2} Accordingly, we affirm, in part, and vacate, in part, the judgment of the trial court. We vacate Huckleberry's two sentences involving the possession of drugs and trafficking in drugs and further vacate the part of these two convictions involving the degree of each of the two offenses. We remand this cause to the trial court for further proceedings consistent with this opinion.
 I. {¶ 3} A Scioto County Grand Jury indicted Huckleberry for three offenses, i.e., possession of drugs in violation of R.C. 2925.11(A) and (C)(4)(e); trafficking in crack cocaine in violation of R.C.2925.03(A)(1) and (C)(4)(f); and tampering with evidence in violation of R.C. 2921.12(A)(1). Huckleberry entered not guilty pleas and the case proceeded to a jury trial.
 A. State's Version of the Facts at Trial {¶ 4} One day in the early fall of 2006, Brooklyn Froe was at apartment B located at 1600 Fifth Street (hereinafter "crack house") in Portsmouth, Ohio. She was with her boyfriend, Brannon Peterson, who was at the apartment selling *Page 3 
crack cocaine. Froe referred to the apartment as a "trap house" or a "crack house," meaning it was a location where a drug dealer goes to "set up shop and sells crack cocaine." Also at the apartment on that evening was Huckleberry, along with Tracey Peck, Donna Webb (the leaseholder of the apartment), and Destiny Winters (Webb's daughter).
 {¶ 5} On the same day, Steven Timberlake and Todd Bryant, narcotics investigators with the Portsmouth Police Department, obtained a search warrant for the crack house. Timberlake, Bryant, and officers from the Columbus Drug and Gang Unit went to the crack house to execute the search warrant.
 {¶ 6} Knowing that the front entrance of the crack house was blocked by a piece of furniture, the officers knocked on the kitchen door and identified themselves as police officers. When nobody responded to the knock within a reasonable time, the officers used force to enter.
 {¶ 7} Timberlake found Peck and Froe in one of the bedrooms. Bryant found Huckleberry in the living room sitting on a chair rolling a marijuana joint. Upon seeing Bryant, Huckleberry threw a bag of marijuana that he had sitting in front of him across the room. Bryant then restrained Huckleberry and found $870 of cash on his person, mostly in twenty-dollar bills.
 {¶ 8} A search of the entire apartment revealed a number of crack pipes, chore boy, and marijuana. The officers found individually packaged rocks of crack cocaine on Peck and found crack cocaine on Froe. The officers also discovered cocaine residue on a mirror near where Huckleberry was rolling a marijuana "blunt." *Page 4 
 {¶ 9} The officers arrested Huckleberry, Peck and Froe. Peck informed Timberlake that Sanyll Brigner was holding crack cocaine for Huckleberry at an apartment on Robinson Avenue in Farley Square.
 {¶ 10} Timberlake went to the residence on Robinson Avenue and spoke with Brigner and her mother. Timberlake requested consent to search the home, and the mother consented. In addition, Timberlake asked Brigner to tell him where the drugs were located before the search began. He informed Brigner that a K-9 unit had been contacted and would assist in the search. Brigner's mother told her daughter to give the drugs to Timberlake if she knew where they were.
 {¶ 11} Brigner started crying; walked to a closet; pulled out a shirt; and handed it to Timberlake, telling him that the drugs were in the pocket. Upon looking in the shirt pocket, Timberlake discovered a baggy containing a substance that appeared to be crack cocaine. Later, BCI analysis confirmed that it was 27.02 grams of crack cocaine.
 {¶ 12} Timberlake arrested and interrogated Brigner. She told him that Huckleberry gave her the crack cocaine the day before and told her to hold the drugs for him until he came back for them later. She further told him that she actually saw Huckleberry sell crack cocaine on two occasions during their brief relationship.
 {¶ 13} The state charged Brigner with possession of drugs. She made a deal with prosecutors and agreed to testify against Huckleberry. She pled guilty to a felony of the fourth degree and received five years of probation. Froe also agreed to testify against Huckleberry in exchange for leniency in sentencing. *Page 5 
 B. Huckleberry's Version of Facts at Trial {¶ 14} Huckleberry did not testify or call any witnesses. Through cross-examination of the state's witnesses, he sought to convince the jury that he was not guilty of the offenses because the witnesses cut a deal with the state and their testimony could not be trusted.
 C. Jury Verdicts, Court Findings, Sentencing, Appeal {¶ 15} The jury returned verdicts of guilty of possession of drugs, guilty of trafficking in drugs, and guilty of tampering with evidence. The court found that the first two offenses were felonies of the first degree and the last offense a felony of the third degree. It sentenced Huckleberry to a twenty-year prison term, i.e., nine years for the possession of drugs; nine years for the trafficking in drugs; and two years for the tampering with evidence offense. (The sentences ran consecutive to each other.)
 {¶ 16} Huckleberry appeals the possession of drugs and trafficking in drugs convictions and sentences (he does not appeal the tampering with evidence conviction and sentence) and asserts the following four assignments of error: I. "THE TRIAL COURT VIOLATED JERAMY HUCKLEBERRY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR POSSESSION AND TRAFFICKING IN CRACK COCAINE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. II. "THE TRIAL COURT COMMITTED PLAIN ERROR BY CONVICTING JERAMY HUCKLEBERRY OF TWO FIRST-DEGREE FELONIES, WHEN THE VERDICT FORMS WERE SUFFICIENT ONLY TO SUPPORT CONVICTIONS FOR A *Page 6 
THIRD-DEGREE MISDEMEANOR AND A FIFTH-DEGREE FELONY, RESPECTIVELY." III. "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT SENTENCED JERAMY HUCKLEBERRY FOR TWO ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF R.C. 2941 25(A) AND (B), WHICH REQUIRE THAT SUCH CHARGES MUST BE MERGED." And IV "TRIAL COUNSEL WAS INEFFECTIVE, IN VIOLATION OF THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO OBJECT TO THE IMPOSITION OF AN ILLEGAL SENTENCE."
 II. {¶ 17} Huckleberry contends in his second assignment of error that the trial court erred when it convicted him of two felonies of the first degree. He asserts that the wording of the verdict forms only support verdicts for a misdemeanor of the third degree and a felony of the fifth degree.
 {¶ 18} Huckleberry failed to object to the verdict forms in the trial court. However, a defendant's failure to "raise the inadequacy of the verdict form" does not forfeit this argument on appeal. State v.Pelfrey, 112 Ohio St.3d 422, 2007-Ohio-256, ¶ 14.
 {¶ 19} Here, the wording in issue on the verdict forms provided as follows: Form One: "We the jury, being duly impaneled, hereby find the defendant guilty of Count 1, Possession of Drugs." Form Two: "We the jury, being duly impaneled, hereby find the defendant guilty ofCount 2, Trafficking in Drugs." *Page 7 
 {¶ 20} Huckleberry maintains that this wording does not meet the requirements for felonies of the first degree. In support, he cites R.C.2945.75(A)(2) and Pelfrey, supra.
 {¶ 21} R.C. 2945.75(A)(2) provides, "When the presence of one or more additional elements makes an offense one of more serious degree * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 22} Here, a misdemeanor of the third degree is the least degree of a possession of drugs conviction. See R.C. 2925.11(C)(2)(a). Likewise, a felony of the fifth degree is the least degree of a trafficking in drugs conviction. See R.C. 2925.03(C)(2)(a).
 {¶ 23} In Pelfrey, the Supreme Court of Ohio interpreted R.C.2945.75(A)(2) and held that "a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id. at syllabus.
 {¶ 24} Here, the two verdict forms failed to specify the statutory section of the offense or specifically set forth the degree of the crime charged. In addition, the verdict forms contained nothing regarding any aggravating element, i.e., that the substance was either crack cocaine or that it exceeded a certain weight. While the state presented evidence that the drug involved was crack cocaine, the jury *Page 8 
made no specific finding in that regard. Further, although the state presented evidence that the amount of crack cocaine involved exceeded twenty-five grams, the jury made no specific finding in that regard. Therefore, the possession of drugs verdict supports a misdemeanor of the third degree conviction, and the trafficking in drugs supports a felony of the fifth degree conviction. Consequently, the trial court erred when it found Huckleberry guilty of two felonies of the first degree.
 {¶ 25} Accordingly, we sustain Huckleberry's second assignment of error; vacate his two sentences and the part of his convictions for possession and trafficking involving the degree of each of the two offenses; and remand this cause to the trial court for further proceedings consistent with this opinion.[1]
 III. {¶ 26} Huckleberry contends in his third assignment of error that, pursuant to R.C. 2941.25, possession of drugs and trafficking in drugs are allied offenses of similar import. He claims that the trial court should have merged the two offenses into one offense and sentenced him accordingly.
 {¶ 27} We have already addressed this issue in State v. McGhee, Lawrence App. No. 04CA15, 2005-Ohio-1585. For the same reasons stated inMcGhee, we find that possession of drugs and trafficking in drugs are not allied offenses of similar import. See id. at ¶¶ 14-15; contra,State v. Cabrales, Hamilton App. No. *Page 9 
C-050682, 2007-Ohio-6334 (Supreme Court of Ohio accepted a certified conflict discretionary appeal).
 {¶ 28} Accordingly, we overrule Huckleberry's third assignment of error.
 IV. {¶ 29} Huckleberry contends in his first assignment of error that the possession of drugs and trafficking in drugs convictions are against the manifest weight of the evidence.
 {¶ 30} In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-371. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 31} The trier of fact is free to believe or disbelieve a witness's testimony in whole or in part. State v. Wagner (Feb. 29, 2000), Pickaway App. No. 99CA23, citing Swanson v. Swanson (1976), 48 Ohio App.2d 85,97. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence *Page 10 
inherently possess the same probative value and therefore should be subjected to the same standard of proof." State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus (superseded by state constitutional amendment on other grounds).
 A. {¶ 32} Regarding the possession of drugs conviction, Huckleberry contends that the state did not prove that he possessed the drug. He further claims that the jury should not have believed the testimony of Brigner because she made a deal with the state in exchange for her testimony.
 {¶ 33} R.C. 2925.11(A) provides, "No person shall knowingly * * * possess * * * a controlled substance." The term "possession" is defined as having "control over a thing or substance." R.C. 2925.01(K); see, also, State v. Remy, Ross App. No. 03CA2731, 2004-Ohio-3630, ¶ 56. "Possession can be actual or constructive." Remy at ¶ 56, citingState v. Wolery (1976), 46 Ohio St.2d 316; State v. Barr (1993),86 Ohio App.3d 227.
 {¶ 34} "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession." Id., citing State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. This court has held that, "[f]or constructive possession to exist, `[i]t must also be shown that the person was conscious of the presence of the object.'"State v. Harrington, Scioto App. No. 05CA3038, 2006-Ohio-4388, ¶ 15, citing Hankerson at 91. Further, "two or more persons may have joint constructive possession of a particular item." State v. *Page 11 Cooper, Marion App. No. 9-06-49, 2007-Ohio-4937, ¶ 25, citing State v.Mann (1993), 93 Ohio App.3d 301, 308; State v. Riggs (Sept. 13, 1999), 4th Dist. No. 98CA39. "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion or control over it."State v. Reed, Champaign App. No. 2002-CA-30, 2003-Ohio-5413, ¶ 19.
 {¶ 35} Here, Huckleberry did not have actual possession of the crack cocaine on the date in question. Instead, the drugs were in the possession of Brigner who testified that Huckleberry gave her the drugs the day before to hold for him. Brigner then took the drugs into her apartment and concealed them inside a shirt pocket in a closet.
 {¶ 36} There was no evidence that Huckleberry had access to Brigner's apartment or that Huckleberry even knew where Brigner concealed the drugs in the apartment. However, it is not unreasonable for the jury to conclude that Huckleberry was conscious of the existence of the drugs and that he had dominion or control over them when they were concealed in the shirt pocket. Because Brigner was merely holding the drugs for Huckleberry, it is not unreasonable to infer that Huckleberry could take back actual possession of the drugs whenever he came calling upon Brigner. Thus, based on this evidence, the jury could conclude that Huckleberry could exercise dominion or control over the drugs, and thus, was in constructive possession of the drugs.
 {¶ 37} In addition, the jury, as the trier of fact, was free to believe or disbelieve Brigner's testimony in whole or in part. *Page 12 
 {¶ 38} Therefore, we cannot say, in resolving conflicts in the evidence, that the jury clearly lost its way and created such a manifest miscarriage of justice that the possession of drugs conviction must be reversed and a new trial granted.
 B. {¶ 39} In regards to the trafficking in drugs offense, Huckleberry contends that the state did not prove that he knowingly trafficked the crack cocaine found at Brigner's apartment.
 {¶ 40} R.C. 2925.03(A)(2) provides, "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 41} Here, the evidence supports a finding that Huckleberry knowingly transported crack cocaine to his girlfriend, when he knew that he intended to sell the crack cocaine in the future. Brigner testified about Huckleberry transporting the large "rock" of crack cocaine (27 grams), which was inside a plastic baggie, to her. He told her to hold it for him, and that he would come back to retrieve it from her.
 {¶ 42} In addition, Brigner further testified that she actually saw Huckleberry sell crack cocaine to others on two different occasions. Officer Bryant testified that the officers found $870 in cash, mostly twenty-dollar bills, on Huckleberry. Officers Timberlake and Bryant testified and explained that drug dealers break a large crack "rock" into smaller rocks with each smaller rock having a street value *Page 13 
of twenty dollars. The smaller twenty-dollar "rocks" are then placed into the corner of a sandwich baggy and the baggy is then twisted at the corner where the "rock" is stored and then tied. Any excess portion of the sandwich baggy is then ripped off. Officer Timberlake testified that he found a number of these ripped sandwich bags at the Fifth Street crack house. He also testified that a twenty-dollar "rock" of crack cocaine is considered a personal use amount while a large "rock" of 27-28 grams "is usually considered to be for resale." Therefore, based on this evidence, the jury could reasonably infer that Huckleberry intended to sell the crack cocaine that he transported to his girlfriend for safekeeping.
 {¶ 43} Again, Huckleberry maintains that the jury should not have believed Brigner's testimony. However, as we stated earlier, the jury, as the trier of fact, is free to believe or disbelieve a witness's testimony in whole or in part.
 {¶ 44} Therefore, we cannot say, in resolving conflicts in the evidence, that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction of trafficking in drugs must be reversed and a new trial granted.
 C. {¶ 45} In conclusion, we find that the jury' verdicts of guilty of possession of drugs and guilty of trafficking in drugs are not against the manifest weight of the evidence.
 {¶ 46} Accordingly, we overrule Huckleberry's first assignment of error.
 V. *Page 14 {¶ 47} Huckleberry contends in his fourth assignment of error that he had the ineffective assistance of counsel at trial. He claims that his counsel should have objected to the improper verdicts involving the possession and trafficking of drugs, which resulted in improper sentences. He further claims that his counsel should have objected to the court's failure to find the possession and trafficking convictions allied offenses of similar import.
 {¶ 48} The United States Supreme Court holds that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." Strickland v. Washington (1984), 466 U.S. 668, 684. "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685. As this court has stated, "effective counsel is one who `plays the role necessary to ensure that the trial is fair.'" State v. Wright, Washington App. No. 00CA39, 2001-Ohio-2473, citing Strickland at 685. Therefore, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., citing Strickland at 685-686.
 {¶ 49} In showing his attorney's ineffectiveness, Huckleberry must show two things: (1) "that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense[,]" which "requires showing that *Page 15 
counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland at 687.
 {¶ 50} Here, based on our resolution of Huckleberry's second and third assignments of error, Huckleberry cannot show that he was prejudiced. That is, his counsel's failure to object to the inadequacy of the jury verdict forms did not forfeit the argument for appeal. Pelfrey at ¶ 14. In addition, we found that possession of drugs and trafficking in drugs are not allied offenses of similar import.
 {¶ 51} Accordingly, we overrule Huckleberry's fourth assignment of error.
 VI. {¶ 52} In conclusion, we overrule Huckleberry's first, third, and fourth assignments of error. We sustain his second assignment of error.
 {¶ 53} Accordingly, we affirm, in part, and vacate, in part, the judgment of the trial court. We vacate Huckleberry's two sentences involving the possession of drugs and trafficking in drugs and further vacate the part of these two convictions involving the degree of each of the two offenses. We remand this cause to the trial court for further proceedings consistent with this opinion.
 JUDGMENT AFFIRMED, IN PART; VACATED, IN PART; AND CAUSE REMANDED. *Page 16 
 JUDGMENT ENTRY
It is ordered that this JUDGMENT BE AFFIRMED, IN PART; VACATED, IN PART; and that this cause BE REMANDED to the trial court for further proceedings consistent with this opinion. Appellant and appellee shall equally pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion.
[1] But for Pelfrey, we would have overruled this assignment of error. See, e.g., State v. Wireman, Pike App. No. 01CA662, 2002-Ohio-1526. In fact, the Supreme Court of Ohio accepted the Pelfrey case based on a certified conflict from the Second District Court of Appeals because it conflicted with, inter alia, our decision in Wireman. Pelfrey at ¶ 1. Of course, we are required to follow the Pelfrey pronouncement. *Page 1