[Cite as *State v. Clark*, 2016-Ohio-948.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150318 |
| | | TRIAL NO. B-1306524 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| TERRY CLARK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 11, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ravert J. Clark*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

SYLVIA S. HENDON, Presiding Judge.

{¶1}   Following a bench trial, defendant-appellant Terry Clark was convicted of murder with accompanying weapon specifications, two counts of felonious assault with accompanying weapon specifications, and having a weapon while under a disability.  He was sentenced to an aggregate term of 18 years' to life imprisonment.

{¶2}   Clark has appealed, arguing in four assignments of error that his constitutional right to a public trial was violated; that his right to be present during all stages of his trial was violated; that his convictions were against the manifest weight of the evidence; and that the use of felonious assault as the predicate offense for his felony-murder conviction violated his due-process rights.  Finding no merit to Clark's arguments, we affirm the trial court's judgment.

### Facts and Procedure

{¶3}   The evidence presented at trial established that, on October 12, 2013, Clark, Lamont Adams, Essense Jones, and several other individuals were partying in the parking lot of an apartment complex on Lantana Avenue in the Cincinnati neighborhood of College Hill.  Cincinnati Police Officer Anthony Egner was dispatched to the party in response to a noise complaint.  Numerous party-goers, including Clark and Jones, fled upon Officer Egner's arrival, but Adams remained on the scene.  Officer Egner noticed a Dodge Charger in the parking lot with an open driver's door.  He examined the car and saw Clark's identification card on the front seat.  After the police left, those who had fled returned to the scene.  Clark found that

his car keys and cell phone were missing from the Dodge Charger, and he asked everybody at the scene if they had taken his items.

{¶4}   The following evening, October 13, 2013, Clark was still attempting to ascertain what had happened to his cell phone and keys.  He called Jones, who had "hooked up" with Adams, and was at the time in Adams' car with Adams and their friend Daniko Mizell on St. Elmo Street.  Adams got on the phone and gave Clark their location.  Clark arrived within minutes.  He approached Adams' vehicle on the driver's side, speaking to Adams, Jones, and Mizell through the open driver's window.  Clark began asking them about his missing items.  Jones suggested that the police had taken his belongings, but Clark stated that he had called the police and they had denied taking anything from the Dodge Charger the previous evening.  The discussion began to escalate, and Jones exited from the car after Clark said, "You better quit playing before I shoot one of you all."  Prior to her exit, she never heard Adams threaten Clark or saw him pull out a weapon.

{¶5}   Jones heard a gunshot as she walked away.  When she turned around, Clark ran past her.  Jones saw Mizell running in the other direction and Adams laying on the ground near his car.  Shortly after the shooting, Jones received another call from Clark.  She did not answer, and Clark left an apparently inadvertent voicemail in which he can be heard stating that "I shot his ass.  Well, he knew I was gonna shoot him, they keep lying."  Officer Egner responded to the shooting and found Adams lying face-up on the street, already deceased.  No weapons were found at the scene.

{¶6}   Clark was apprehended by the Cincinnati Police Fugitive Unit on October 25, 2013.  He was charged with the following offenses:  murder pursuant to

R.C. 2903.02(A) and (B), felonious assault pursuant to R.C. 2903.11(A)(1) and (A)(2), and having a weapon while under a disability pursuant to R.C. 2923.13(A)(2) and (A)(3). Weapon specifications accompanied all charges for murder and felonious assault.

{¶7} The case proceeded to a bench trial. Clark testified on his own behalf and stated that he had shot Adams in self-defense. He indicated that when he had confronted Adams about taking his cell phone and keys, Adams revealed a gun and pointed it at Clark. Clark testified that he had shot Adams only because he believed that Adams was about to shoot him.

{¶8} The trial court acquitted Clark of murder pursuant to R.C. 2903.02(A) and having a weapon while under a disability pursuant to R.C. 2923.13(A)(3). He was convicted of the remaining offenses and sentenced to an aggregate term of 18 years' to life imprisonment.

### *Courtroom Closure*

{¶9} In his first assignment of error, Clark argues that the trial court's closure of the courtroom violated his constitutional right to a public trial.

{¶10} During trial, the court became aware of an episode of witness intimidation that had occurred. The state had intended to call Antonio Buford to testify as a witness in its case. Prior to testifying, Buford had been videotaped entering and exiting the courtroom by an individual named Kevin Abernathy. Abernathy posted the video of Buford on Facebook with commentary indicating that Buford was a snitch. After learning of this incident, the court ordered that anyone entering the courtroom had to present a valid form of identification, and it banned cell phones from the courtroom. The court then ordered all spectators to exit from

4

the room. They were allowed to return immediately upon showing a valid form of identification to sheriff deputies at a security table outside the courtroom. Clark's grandmother did not have any identification on her person and was unable to reenter the courtroom.

{¶11} Clark contends that the trial court's closure of the courtroom and requirement that all spectators show identification violated his constitutional right to a public trial. We disagree with Clark's characterization of the trial court's actions. After becoming aware of an episode of witness intimidation, the court implemented a measure to protect the safety of all witnesses and to prevent further witness intimidation. No actual closure of the courtroom occurred. The safety measures implemented were narrowly tailored, allowed the courtroom to remain open to the public, and were well within the discretion accorded to the trial court to control the proceedings before it. *See State v. Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 70. We hold that the trial court's requirement that all spectators present a valid form of identification before entering the courtroom did not infringe upon Clark's right to a public trial. *See State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 100-101. The first assignment of error is overruled.

### *Defendant's Presence in the Courtroom*

{¶12} In his second assignment of error, Clark argues that the trial court violated his right to be present at all stages of the proceedings. Crim.R. 43(A) provides that "the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence."

{¶13} During Clark's trial, in between witnesses called by the state, the court conducted a hearing to determine whether there was probable cause to charge Kevin Abernathy with contempt based on his actions. Clark was not present during this probable-cause hearing, and he contends that his absence violated Crim.R. 43.

{¶14} The probable-cause hearing against Abernathy was a collateral proceeding and was entirely unrelated to the charges Clark faced. Clark's counsel conceded as much at the time, stating on the record that "I don't think it has to be part of this record and it has nothing to do with this trial." Because the probable-cause hearing was a collateral proceeding unrelated to Clark's trial, his absence did not violate Crim.R. 43(A). *See State v. Hale*, 1st Dist. Hamilton No. C-810856, 1982 Ohio App. LEXIS 14604 (Dec. 15, 1982) (holding that a defendant's Crim.R. 43(A) right to be present at all stages of the proceedings was not violated when the trial court conducted contempt proceedings against the prosecutor in its chambers, outside of the defendant's presence, during the defendant's trial).

{¶15} The second assignment of error is overruled.

### *Self-Defense*

{¶16} In his third assignment of error, Clark argues that his conviction for murder was against the manifest weight of the evidence. When reviewing the manifest weight of the evidence, an appellate court must weigh all evidence and reasonable inferences and consider the credibility of the witnesses to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶17} Clark was convicted of murder under R.C. 2903.02(B), which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." The underlying offense of violence that Clark was charged with in this case was felonious assault, a felony of the second degree.

{¶18} Clark admits to shooting Adams, but he argues that the record established that he had acted in self-defense. A defendant is entitled to rely on the affirmative defense of self-defense when he establishes that he was not at fault in creating the violent situation, that he had a bona fide belief that he was in danger of imminent death or great bodily harm and that the only means of escape was by use of force, and that he did not violate any duty to retreat or avoid the danger. *See State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). The defendant must prove each element of self-defense by a preponderance of the evidence. *State v. Miller*, 1st Dist. Hamilton No. C-070691, 2008-Ohio-5899, ¶ 15.

{¶19} Following our review of the record, we hold that Clark failed to prove by a preponderance of the evidence that he had acted in self-defense, and that the trial court did not err in rejecting Clark's self-defense argument. First, Clark was at fault in creating the violent situation. He called Jones and Adams to determine their whereabouts, and he initiated the confrontation about his missing belongings. Second, other than Clark's self-serving testimony, the record contains no evidence that Clark was in danger of imminent death or great bodily harm. Jones never saw Adams threaten Clark or produce a weapon while speaking with him. And no weapon was found on or around Adams' body after he was killed.

{¶20} Clark's conviction for murder was not against the manifest weight of the evidence. The third assignment of error is overruled.

{¶21} In his fourth assignment of error, Clark argues that the use of felonious assault as the predicate offense for his felony-murder conviction violated his due-process rights. But Clark has not provided any argument, reference to the record, or citation to legal authority in support of this assignment of error, as is required by App.R. 16.1(A)(3). Consequently, the assignment of error is overruled. *See Guarino-Wong v. Hosler*, 1st Dist. Hamilton No. C-120453, 2013-Ohio-1625, ¶ 20.

{¶22} Having overruled all of Clark's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM** and **DEWINE, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.