DECISION.
{¶ 1} Following a jury trial, defendant-appellant Billy Ray Dixson was found guilty of four counts of felonious assault, in violation of R.C. 2903.11(A)(2), accompanied by gun specifications. The trial court sentenced Dixson to a total of fifteen years' incarceration.
 {¶ 2} On appeal, Dixson raises six assignments of error: (1) that he was denied the effective assistance of counsel; (2) that the trial court erred by failing to give an appropriate jury instruction; (3) that his conviction was based upon insufficient evidence; (4) that his conviction was contrary to the manifest weight of the evidence; (5) that the court erred by sentencing him to a prison term that was more than the minimum, by imposing consecutive prison terms, and by failing to state its sentencing findings on the record; and (6) that the court improperly sentenced him to consecutive prison terms for allied offenses of similar import. We sustain Dixson's fifth assignment of error and remand this case to the trial court for resentencing. We overrule the remaining assignments of error.
 The Evidence Presented at Trial {¶ 3} The state presented evidence at trial that, on June 8, 2002, Brandon Price, Belinda Hughes, Price's sister, and her nine-month-old daughter were in a car stopped at the intersection of State Route 4 and Kemper Road. Price noticed that, in the Honda stopped behind them, a male driver and his female passenger were arguing. Dixson was the driver, and Jodie Andrews was his passenger.
 {¶ 4} As Price turned onto Kemper Road, he noticed that Dixson passed them and moved into a left-turn lane. When Price was about to pass the Honda on the right side as he proceeded down Kemper Road, the Honda suddenly swerved in front of Price's car, nearly striking the front of it. At that time, Price's sister yelled to Dixson that she had a child in the car, and that Dixson should watch how he was driving.
 {¶ 5} Dixson proceeded to drive quickly down Kemper Road. Price soon passed Dixson's car in the right lane of traffic, because the traffic in Dixson's lane had stopped. Hughes saw that Dixson had begun making hand gestures, and that he had reached under his seat. As Dixson did so, his female passenger began to hit him. Price then began to make a left turn onto Chesterdale Road in order to get away from Dixson. Price testified that he and his passengers were afraid of Dixson's "road rage." As Price turned, Dixson passed him, swerved his car in front of Price's car, and cut in front of him a second time.
 {¶ 6} Dixson then began to "brake-check" Price by repeatedly slamming on his brakes, so Price slowed down. Dixson then pulled out a gun, stuck the gun out his window, and started to fire it at Price's car. After Dixson fired about three rounds, he kept driving, so Price thought the ordeal was over. Then Dixson slowed down and turned into a gravel drive, and he began firing at Price's car again.
 {¶ 7} Dixson continued to fire his gun as he slowed and turned around in the drive. To avoid being struck by the bullets, Price ducked behind the dashboard and tried to maneuver his car past the passenger's side of the Honda, because Dixson was firing from the driver's side of his car.
 {¶ 8} Price drove to a friend's home nearby to report the shooting and to call for emergency assistance. No one in his car had been struck by the bullets. Price saw bullet holes in the center of the driver's door, above the fender on the driver's side, in a light plate, and near the fog lights. Price also discovered a bullet hole in the oil pan. The police arrived within five minutes, and Price and his passengers gave descriptions of Dixson, Andrews, and the Honda.
 {¶ 9} Sharonville Police Detective Christopher Wilson testified that officers located the Honda parked outside an apartment building in a complex off Chesterdale Road. Detective Wilson saw that the car's passenger window was broken. He testified that the damage in and around the area was consistent with gunfire. He also saw a live round embedded near the base of the passenger's seat.
 {¶ 10} Detective Wilson testified that the police received a call that indicated that the shooting suspects had run into one of the apartment buildings in the complex. The police set up a perimeter around the area. After determining that the suspects were likely in one of the apartments, the police evacuated the rest of the building and called in the Hamilton County SWAT Team. Meanwhile, the police learned that the Honda had just been reported stolen.
 {¶ 11} Detective Wilson recovered a spent nine-millimeter casing at the driveway entrance to the apartment complex. He recovered a round fragment stuck in the metal frame of the rear passenger window of the Honda. He also saw a bullet entry point on the base of the passenger window.
 {¶ 12} About three hours later, Dixson and his female passenger walked out of the apartment and were immediately arrested. The woman gave police consent to search the apartment. Police recovered from the apartment keys to the Honda and a nine-millimeter gun that had been covered with a sheet and hidden between the toilet and the sink in the apartment's bathroom.
 {¶ 13} Detective Wilson testified that, in addition to the five rounds that had struck Price's car, the two rounds that had struck the Honda, and the live round he had recovered from the Honda, he found seven rounds in the recovered gun. One of the rounds was in the gun's chamber, and six rounds were in its magazine. Detective Wilson testified that the gun and its magazine had a fifteen-round capacity. He test-fired the gun and determined that it was operational.
 {¶ 14} Detective Wilson testified that, upon a further search of the Honda, he recovered a spent shell casing from its center console area and a wallet containing Dixson's Indiana identification card.
 {¶ 15} For the defense, Andrews testified that she was the passenger in the Honda and that she and Dixson had been arguing before he drove in front of Price's car. She said that, at some point, she told Dixson that she thought one of the people in the front seat of Price's car had a gun. Following the shooting incident, Dixson drove to her apartment. She testified that Dixson had threatened to kill himself, and that he had held the gun to his head, so she did not want to leave him there.
 {¶ 16} Dixson testified that he had been arguing with Andrews when he cut in front of Price's car. He said that he had had no idea what he had done "until they pulled up alongside of me and the girl was hanging out the window, you know, screaming and hollering. The driver was screaming and hollering. He flipped me the bird." Dixson admitted that he made the same gesture back to them.
 {¶ 17} Dixson said that Price followed them and that, at one point, he took a gun from under his seat and put it in his lap. Then he looked in his side rear-view mirror and saw Price with a "pistol sticking out like he was about to shoot at me first." So, at that point, Dixson stuck his gun out and fired shots at Price's car. In doing so, Dixson shot out his own window. He testified that he then fired a few more rounds at Price "because I thought he was going to kill me or do something to us." Dixson claimed that he had been acting in self-defense. But, on cross-examination, Dixson admitted that nothing had prevented him from fleeing from the incident, except for the fact that Andrews had been scared and had wanted to get home.
 {¶ 18} Dixson testified that he then drove to Andrews's apartment, where he considered suicide. He called the owner of the Honda, Tamara Federle, and told her to report the car stolen so that she would not get into trouble.
 No Ineffective Assistance of Counsel {¶ 19} In his first assignment of error, Dixson argues that he was denied the effective assistance of counsel. In order to establish ineffective assistance of counsel, Dixson must demonstrate that his counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for such deficiency, the outcome of the trial would have been different.[1] Judicial review of counsel's performance must be highly deferential.[2] A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[3]
 {¶ 20} Dixson first argues that counsel was ineffective for failing to file a motion in limine or to object to evidence that two of the victims were pregnant at the time of the offenses. But Dixson fails to demonstrate that he was prejudiced in any way by the evidence. Dixson also argues that counsel failed to request a jury instruction on the inferior-degree offense of aggravated assault. But counsel's decision to forego such a request was a matter of trial strategy and did not give rise to ineffective assistance of counsel.[4] Dixson further argues that counsel was ineffective because he reserved his opening statement, but Dixson fails to offer any explanation about how he was prejudiced by counsel's performance. We will not second-guess counsel's tactical decisions, including his decision to delay opening statement.[5] Accordingly, we overrule Dixson's first assignment of error.
 No Failure by the Trial Court in its Jury Instructions {¶ 21} In his second assignment of error, Dixson argues that the trial court erred by failing to instruct the jury on the offense of aggravated assault, although he had not made a request for such an instruction at trial. Crim.R. 30(A) provides that a party may not assign as error on appeal the giving of or failure to give any jury instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Failure to request specific instructions or to object to those given waives all but plain error.[6]
 {¶ 22} Under the plain-error doctrine, we must examine the error asserted in light of all the evidence properly admitted at trial and determine whether the jury would have found Dixson guilty even if the error had not occurred.[7] Thus, plain error occurs only if "but for the error, the outcome of the trial clearly would have been otherwise."[8]
 {¶ 23} Except for the additional mitigating factor of serious provocation, the elements of aggravated assault and felonious assault are identical.[9] Thus, in a trial for felonious assault, a defendant must present sufficient evidence of serious provocation in order to warrant an instruction on the lesser offense of aggravated assault.[10]
 {¶ 24} To determine whether sufficient evidence of serious provocation exists, a trial court must employ a two-part inquiry. First, the court must objectively determine whether the alleged provocation was reasonably sufficient to bring on a sudden passion or fit of rage.[11] "If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'"[12]
 {¶ 25} Dixson argues that sufficient evidence of provocation existed because he had been followed by Price, had been cursed at and gestured to by Price and his passenger, had a gun pointed at him, and had been struck by Price's car. But words and gestures do not constitute provocation that is sufficient to incite a person into using deadly force.[13] Furthermore, Dixson's claim that he saw a pistol in Price's hand, even if believed, would not have constituted serious provocation, where Dixson's car was driving away in front of Price's car, and where Dixson admitted that he had had an opportunity to get away from Price. Dixson's claim that he feared for his own safety did not constitute sudden passion or rage as contemplated by the aggravated-assault statute.[14] Nor would the bumping of Dixson's car by Price's car have been sufficient evidence of serious provocation because the contact followed Dixson's first volley of gunfire.[15]
 {¶ 26} Accordingly, Dixson failed to meet the objective standard of the two-part inquiry to demonstrate reasonably sufficient provocation.[16] Moroever, even if Dixson's conduct could have been viewed as sufficiently provocative under the objective standard, and the claim that he feared for his own safety was believable, the evidence would not have proved sudden passion or rage as contemplated by the aggravated-assault statute.[17] Therefore, we hold that the trial court did not commit plain error when it did not instruct the jury on the offense of aggravated assault. We overrule the second assignment of error.
 Weight and Sufficiency of the Evidence {¶ 27} In his third and fourth assignments of error, Dixson contends that his convictions were based upon insufficient evidence and were against the manifest weight of the evidence. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether such evidence could have convinced any rational trier of fact that the essential elements of the crimes were proved beyond a reasonable doubt.[18] In reviewing a claim that a conviction was against the manifest weight of the evidence, this court must review the record, weigh the evidence, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[19]
 {¶ 28} Specifically, Dixson argues that he had established the affirmative defense of self-defense by a preponderance of the evidence. Because Dixson was charged with felonious assault, the state was required to prove beyond a reasonable doubt that Dixson had knowingly caused or attempted to cause physical harm to the victims by means of a deadly weapon or dangerous ordnance.[20] In this case, the state presented evidence that Dixson had knowingly fired a gun at the four occupants of Price's car. We hold that the evidence was sufficient to support Dixson's felonious-assault convictions because the jury reasonably could have found that the essential elements of the crimes were proved beyond a reasonable doubt.
 {¶ 29} Under Ohio law, self-defense is an affirmative defense for which an accused must prove the following by a preponderance of the evidence: (1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) the accused must not have violated any duty to retreat or to avoid the danger.[21]
Further, the "elements of self-defense are cumulative. * * * If the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense."[22]
 {¶ 30} At trial, Dixson asserted that he acted in self-defense. But the evidence introduced at trial did not support his claim. Not only did Dixson create the situation giving rise to the shootings by pursuing Price's car and driving aggressively, but Dixson also admitted that he could have escaped from any danger that he had perceived. The jury clearly was not persuaded by Dixson's claim that he had acted in self-defense. We hold that the manifest weight of the evidence supported the jury's verdicts of guilt on the charges of felonious assault, and that the trier of fact did not clearly lose its way. Therefore, we overrule the third and fourth assignments of error.
 Separate Animus Allowed Multiple Felonious-Assault Convictions {¶ 31} In his sixth assignment of error, Dixson argues that the trial court erred by sentencing him to consecutive terms of imprisonment because the felonious-assault counts involved allied offenses of similar import.
 {¶ 32} R.C. 2941.25(A) prohibits multiple convictions for allied offenses of similar import, providing that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." On the other hand, R.C.2941.25(B) allows multiple convictions for allied offenses when the defendant's conduct "results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each * * *."
 {¶ 33} Felonious assaults arising from the same course of conduct, but against multiple victims, are of "dissimilar import."[23] Where Dixson fired gunshots into a car containing four occupants and caused a separate risk of harm to each of those victims, he was properly convicted of four counts of felonious assault.[24] Therefore, we overrule his sixth assignment of error.
 Sentencing Errors {¶ 34} In his fifth assignment of error, Dixson argues that the trial court erred by sentencing him to more than the minimum term of imprisonment, by imposing consecutive terms of imprisonment, and by failing to state its findings and its reasons for the sentences on the record.
 a. Imposition of Nonminimum Sentences {¶ 35} Because Dixson was convicted of four counts of felonious assault under R.C. 2903.11(A)(2), felonies of the second degree, Dixson faced definite prison terms on each offense of two, three, four, five, six, seven, or eight years.[25]
In this case, the trial court sentenced Dixson to five years' incarceration, more than the minimum term, for each felonious assault.
 {¶ 36} In order to impose a nonminimum sentence on a first offender like Dixson, the trial court had to find at the sentencing hearing that the shortest prison term would demean the seriousness of Dixson's conduct or would not adequately protect the public from future crime.[26] In this case, the trial court made both findings on the record. We note that the court was not required to give its reasons for those findings before it imposed the nonminimum sentences.[27] But, pursuant to R.C.2929.14(B), when imposing such a nonminimum sentence, the trial court must make its statutory findings at the sentencing hearing.[28] In this case, it appears from the record that Dixson may have been sentenced and led from the courtroom by a deputy before the trial court made its findings on the record in support of the sentences.
 b. Sentences on Firearm Specifications {¶ 37} The jury found Dixson guilty of the four felonious-assault charges and of three accompanying firearm specifications for each charge. Specifically, Dixson was found guilty of specifications under R.C. 2941.141 (offender had a firearm while committing the offense), R.C. 2941.145 (offender displayed, brandished, indicated possession of or used the firearm), and R.C. 2941.146 (offender discharged the firearm from a motor vehicle). These specifications carried mandatory prison terms of one year, three years, and five years, respectively.[29]
 {¶ 38} If an offender is convicted of a specification under R.C. 2941.141, the court must impose a one-year prison term upon the offender.[30] If an offender is convicted of a firearm specification under R.C. 2941.145, the court must impose a three-year prison term upon the offender.[31] But if a court imposes the one-year mandatory prison term under R.C.2929.14(D)(1)(a), it cannot also impose the three-year mandatory term on the offender under that division relative to the same felony.[32] Similarly, if a court imposes the three-year mandatory prison term under R.C. 2929.14(D)(1)(a), it cannot further impose the one-year mandatory term on the offender under that division relative to the same felony.[33]
 {¶ 39} In this case, the trial court did not sentence Dixson on either the one-year or the three-year firearm specification for any of the four felonious-assault charges. Although the court could not have imposed more than one of the mandatory prison terms based on firearms specifications attached to felonies committed as part of the same act or transaction, the court was required, under R.C. 2929.14(D)(1)(a) and (b), to sentence Dixson on one of the one-year or one of the three-year firearm specifications.[34]
 {¶ 40} If an offender is convicted of a firearm specification under R.C. 2941.146, the court, after imposing a prison term on the offender for the underlying felony offense, must impose an additional prison term of five years upon the offender.[35]
But the court may not impose more than one additional five-year prison term under R.C. 2929.14(D)(1)(c) on an offender for felonies committed as part of the same act or transaction.[36] "If a court imposes an additional prison term on an offender under division (D)(1)(c) of this section relative to an offense, the court also shall impose a prison term under division (D)(1)(a) of this section relative to the same offense, provided that the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense."[37]
 {¶ 41} Because the felonious assaults in this case stemmed from the same act or transaction, the court properly sentenced Dixson to a mandatory five-year prison term for the firearm specification in R.C. 2941.146 that accompanied one of the offenses.[38] We note that this term was in addition to, not alternative to, the mandatory term that had to be imposed pursuant to either R.C. 2941.141 or R.C. 2941.145.[39]
Moreover, the mandatory prison term imposed under R.C.2929.14(D)(1)(a), for the firearm specifications under R.C.2929.141 or R.C. 2941.145, had to be consecutive to the mandatory five-year prison term imposed under R.C. 2929.14(D)(1)(c), and had to be consecutive to but served prior to the prison term imposed for the underlying felony.[40]
 c. Consecutive Sentences {¶ 42} The trial court ordered the five-year prison terms on the second, third, and fourth counts of felonious assault to run concurrently, but made them consecutive to the five-year prison term imposed for the first felonious-assault count. Dixson complains that the trial court erred by doing so.
 {¶ 43} To impose consecutive sentences under R.C.2929.14(E)(4), the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." The court must also find one of the following: (1) when the offender committed the offenses, he was awaiting trial or sentencing or was under post-release control; (2) the harm caused was so great or unusual that no single prison term would adequately reflect the offender's conduct; or (3) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.[41] In addition, the court must state its reasons for imposing consecutive sentences.[42]
 {¶ 44} In this case, the court made the requisite findings and indicated on its felony-sentencing worksheet that the harm caused was so great or unusual that no single prison term would adequately reflect Dixson's conduct.[43] But the court did not state its reasons for those findings at the sentencing hearing as required by State v. Comer.[44]
 {¶ 45} Therefore, we sustain the fifth assignment of error. We vacate the consecutive aspect of the sentences and remand this case to the trial court for resentencing with instructions that the court impose a mandatory prison term on the firearm specification pursuant to R.C. 2929.14(D)(1)(a). Furthermore, we instruct the trial court to state on the record its reasons for its findings supporting its imposition of consecutive prison terms for the felonious-assault counts.
Judgment affirmed in part, sentences vacated in part, and cause remanded.
Gorman and Sundermann, JJ., concur.
[1] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus.
[2] See Strickland v. Washington, supra, at 689; State v.Bradley, supra, at 142.
[3] Id.
[4] See State v. Clayton (1980), 62 Ohio St.2d 45,402 N.E.2d 1189; State v. Griffie, 74 Ohio St.3d 332, 1996-Ohio-71,658 N.E.2d 764.
[5] See State v. Tibbetts, 92 Ohio St.3d 146, 166-167,2001-Ohio-132, 749 N.E.2d 226.
[6] State v. Coley, 93 Ohio St.3d 253, 266, 2001-Ohio-1340,754 N.E.2d 1129.
[7] State v. Hill, 92 Ohio St.3d 191, 203, 2001-Ohio-141,749 N.E.2d 274.
[8] See State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus.
[9] See R.C. 2903.12 and 2903.11; see, also, State v. Deem
(1988), 40 Ohio St.3d 205, 533 N.E.2d 294.
[10] Deem, supra, paragraph four of the syllabus.
[11] State v. Mack, 82 Ohio St.3d 198, 201, 1998-Ohio-375,694 N.E.2d 1328.
[12] Id., quoting State v. Shane (1992), 63 Ohio St.3d 630,634-635, 590 N.E.2d 272.
[13] See Shane, supra, paragraph two of syllabus; see, also,State v. Rawlins (Dec. 24, 1998), 4th Dist. No. 97CA2539.
[14] See, e.g., Mack, supra, at 201, 1998-Ohio-375,694 N.E.2d 1328; State v. Collins (1994), 97 Ohio App.3d 438,646 N.E.2d 1142.
[15] See, e.g., Deem, supra, at 211, 533 N.E.2d 294.
[16] See Mack, supra, at 202, 1998-Ohio-375,694 N.E.2d 1328.
[17] See Collins, supra; Shane, supra, at 634,590 N.E.2d 272.
[18]See State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541; see, also, State v. Condon,152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696, at ¶ 49.
[19] State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
[20] See. R.C. 2903.11(A)(2).
[21] See State v. Williford (1990), 49 Ohio St.3d 247, 249,551 N.E.2d 1279.
[22] State v. Jackson (1986), 22 Ohio St.3d 281, 284,490 N.E.2d 893.
[23] See State v. Roberts (Nov. 9, 2001), 1st Dist. No. C-000756.
[24] See State v. Murray, ___ Ohio App.3d ___, 2004-Ohio-654,805 N.E.2d 156.
[25] R.C. 2929.14(A)(2).
[26] R.C. 2929.14(B)(2); State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, 793 N.E.2d 473, paragraph two of the syllabus.
[27] State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110,715 N.E.2d 131, syllabus; Comer, supra, at 469, 2003-Ohio-4165,793 N.E.2d 473, at ¶ 26.
[28] Comer, supra, at paragraph two of the syllabus.
[29] R.C. 2941.141, 2941.145, and 2941.146.
[30] R.C. 2929.14(D)(1)(a)(iii).
[31] R.C. 2929.14(D)(1)(a)(ii).
[32] R.C. 2941.145(B).
[33] R.C. 2941.141(B).
[34] R.C. 2929.14(D)(1)(a) and (b).
[35] R.C. 2929.14(D)(1)(c).
[36] Id.
[37] Id.
[38] See R.C. 2929.14(D)(1)(c).
[39] See R.C. 2929.14(E)(1)(a); see, also, State v. Gresham,
8th Dist. No. 81250, 2003-Ohio-744.
[40] R.C. 2929.14(E)(1)(a).
[41] R.C. 2929.14(E)(4)(a) through (c). See, also, State v.Chapman, 1st Dist. No. C-020115, 2002-Ohio-7336, at ¶ 3.
[42] R.C. 2929.19(B)(2)(c).
[43] R.C. 2929.14(E)(4)(b).
[44] 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus.