[Cite as *State v. Bates*, 2015-Ohio-116.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140033 |
| | | TRIAL NO. B-1302293 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| KEVIN BATES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part and Reversed in Part, and Appellant Discharged in Part.

Date of Judgment Entry on Appeal: January 16, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Faruki Ireland & Cox P.L.L.* and *Jeffrey W. DeBeer*, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1} Kevin Bates was the target of a police sting operation. Hoping to arrest Mr. Bates for illegal gun sales, police arranged for a confidential informant to buy firearms from Mr. Bates. But the gun sale never happened; instead, the informant was robbed by two armed men.

{¶2} This course of events led to a jury convicting Mr. Bates of aggravated robbery, as well as carrying a concealed weapon, having a weapon while under a disability and improperly handling a firearm in a motor vehicle. In this appeal, Mr. Bates raises three assignments of error. The first questions various evidentiary decisions of the trial court, the second challenges the weight and sufficiency of the evidence against him, and the third contends that the trial court should have merged the convictions.

{¶3} We find no merit to the evidentiary or merger arguments. But we do conclude that one of the convictions—carrying a concealed weapon—was against the weight and sufficiency of the evidence. Although Mr. Bates had a weapon when he was stopped by undercover officers, there is no evidence that it was concealed. Thus, we reverse the conviction for carrying a concealed weapon and affirm the judgment of the trial court in all other respects.

## I. A Robbery Instead of a Gun Sale

{¶4} Timothy Johnson was working as a confidential informant for the Cincinnati police. Following the instructions of his police handlers, he arranged to purchase three firearms from Kevin Bates, a man whom Mr. Johnson had identified to the police as a "gun guy." The sale was to take place at a gas station. To facilitate the deal, Officer Howard Fox supplied Mr. Johnson with over $300 that had previously

been photocopied by the police. Mr. Johnson was also equipped with a police-provided cell phone and a hidden video recorder.

{¶5} When it came time for the deal, Mr. Bates told Mr. Johnson that the gas station was too busy, so he drove Mr. Johnson to a side street. When they arrived, Mr. Bates left the car saying he needed to get the firearms from his girlfriend's apartment.

{¶6} Mr. Johnson waited in Mr. Bates's parked car. After some time, Mr. Bates called to say that he was on his way back from his girlfriend's apartment. Minutes later, two men with guns approached the car. The hidden video recorder captured the incident. The men searched Mr. Johnson and threatened to shoot him. In addition to taking money and two cell phones from Mr. Johnson, the men discovered the video recorder, ripped it from his body and discarded it.

{¶7} Some ten to 15 minutes later, Mr. Bates came back to the car, and Mr. Johnson told him that he had been robbed. Notably, Mr. Bates did not have firearms with him when he returned to the car. Mr. Bates then drove Mr. Johnson back to the gas station and left him, telling him he would find out who had committed the robbery.

{¶8} Back at the gas station, Mr. Johnson told Officers Fox and Rebecca Napier that he had been robbed. The police officers issued a description of Mr. Bates's car. Officers in two unmarked police cars tailed Mr. Bates. Officer Joshua Fehrman, who was in an unmarked SUV, testified that he saw Mr. Bates pull over to allow two men to get into his car. Eventually, the two unmarked police cars managed to stop Mr. Bates's car.

{¶9} Officer Steve Mittermeier was in the other unmarked car. He testified that as he and Officer Charles Bell walked up to the car with their weapons drawn, he spotted Mr. Bates in the driver's seat, pointing a gun at him. Officer Mittermeier stated that the gun went "across the dashboard" and disappeared from sight. Officer Bell

testified that he also saw Mr. Bates pointing a gun at him as the officers approached the car.

{¶10} Mr. Bates and his two passengers, later identified as Harold Chandler and Tywon Reliford, were removed from the car. A weapon was found in Mr. Chandler's waistband, and Officer Mittermeier retrieved a revolver from the floor of the car under the steering wheel. In addition, police officers recovered all but a $20 bill of the money that had been photocopied earlier by Officer Fox. Mr. Johnson later identified Messrs. Chandler and Reliford as the men who had robbed him.

{¶11} In his statement to police officers, Mr. Bates admitted that he had arranged a gun sale with Mr. Johnson. But he denied that he had set up the robbery. Messrs. Chandler and Reliford told a different story. Both testified that Mr. Bates had orchestrated the robbery. Mr. Reliford stated that Mr. Bates had provided both guns that were used in the robbery, while Mr. Chandler only could be certain that his gun had been provided by Mr. Bates. The stories of all the men differed on details about who knew whom first, who was in the car first and where the guns were handed to Messrs. Chandler and Reliford.

{¶12} Mr. Bates was indicted for aggravated robbery with firearm specifications, robbery, carrying a concealed weapon, having a weapon while under a disability, improperly handing a firearm in the car and felonious assault. The jury found him guilty of all the charges except felonious assault. The trial court merged the aggravated-robbery count with the robbery count and sentenced Mr. Bates to an aggregate sentence of 16 years in prison.

## II. Evidentiary Issues

{¶13}   In his first assignment of error, Mr. Bates asserts that the trial court erred when it allowed the jury to hear inadmissible and highly prejudicial evidence about his character.

{¶14}   Mr. Bates contends that the court erred when it told the jury that he had previously been convicted of felony robbery.  But Mr. Bates's counsel agreed to a written stipulation that specified that Mr. Bates had been convicted of felony robbery, and did not object when the assistant prosecuting attorney read the stipulation into the record before offering it as an exhibit.  The court's statement during jury instructions was taken directly from the stipulation.  Any error in reading the stipulation to the jury was invited error.  *See State v. Eichelbrenner*, 1st Dist. Hamilton No. C-110431, 2013-Ohio-1194, ¶ 15.

{¶15}   Mr. Bates also argues that the trial court allowed in inadmissible other-acts testimony.  Specifically, he complains about three sets of statements—statements that he made to Mr. Johnson while they were in Mr. Bates's car, statements that he made during a police interview with Officers Napier and Mittermeier and statements that Officer Napier made during the interview.

{¶16}   While in the car with Mr. Johnson, Mr. Bates mentioned that he was on "federal paper" (slang for being charged with a federal crime) and that he had sold ammunition to another person.  During the police interview, Mr. Bates, presumably trying to convince the officers that he wanted to work with them, stated that he was a "f**ked up person" and that he knew of an upcoming transaction involving many firearms.  In addition, he claims that the court allowed inadmissible other-acts testimony when Officer Napier repeatedly referred to him as a "gun guy."  Mr. Bates did not object at trial, so we review for plain error.  *See* Crim.R. 52(B).    But all these

statements concerning his prior gun dealings about which Mr. Bates now complains corroborated his claim that he was a middleman who set up the gun sale with Mr. Johnson but not the robbery. We conclude that Mr. Bates has not demonstrated "that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." *See State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶17}   Mr. Bates also argues that the state improperly elicited testimony that he had been incarcerated pending trial. Mr. Bates complains of two specific instances of improper testimony. The first occurred when the state asked Officer Fox if Mr. Johnson had been housed in the Hamilton County Justice Center with Mr. Bates. Officer Fox responded that he had been informed that they were housed together, and that he had asked that Messrs. Bates, Chandler and Reliford be separated in the justice center. Mr. Bates did not object to Officer Fox's testimony. He has not demonstrated that the outcome of the trial would have been different had the testimony not been elicited, so we find no plain error. The other instance cited by Mr. Bates occurred when the state asked Officer Napier if Mr. Bates had been housed with Mr. Johnson. The court sustained Mr. Bates's objection and told the jury to disregard the question and the answer. We presume that the jury followed the court's instruction and conclude that no reversible error occurred. *See State v. Loza*, 71 Ohio St.3d 61, 75, 641 N.E.2d 1082 (1994).

{¶18}   Within his first assignment of error, Mr. Bates also asserts that he was denied a fair trial due to prosecutorial misconduct, that he was denied the effective assistance of counsel and that his convictions should be reversed due to cumulative error. None of these assertions is well-founded.

{¶19}   Mr. Bates did not object to the alleged instances of prosecutorial misconduct, so we review for plain error. *See* Crim.R. 52(B). Mr. Bates maintains that

the assistant prosecuting attorney improperly elicited testimony from Officer Napier that Mr. Bates was a gun guy. We conclude that there was no misconduct in eliciting this testimony. Officer Napier's statements were made as she told how Mr. Johnson became a confidential informant for the officers based on his claim that he knew a gun guy from whom he could buy guns. Further, any prejudicial effect of Officer Napier's statements was blunted by Mr. Bates's concession that he had arranged the gun deal.

{¶20} Mr. Bates also takes issue with the assistant prosecuting attorney's comments during the state's opening statement that he was going to be speaking about a "rough and tough world" full of "rough and tough people" not "choir boys and choir girls." We conclude that these comments, made to introduce the involvement of Mr. Johnson as a confidential informant, were not improper.

{¶21} Nor has Mr. Bates demonstrated that his counsel was ineffective for failing to object to prejudicial evidence. As discussed above, much of the evidence to which Mr. Bates now objects played into his defense narrative that he had set up the gun sale but not the robbery. We will not second guess counsel's decision not to object to the evidence. To the extent that some of the evidence was objectionable, we are unable to say that, on the record before us, the result of the trial would have been different had counsel objected. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶22} Finally, we conclude that Mr. Bates was not deprived of a fair trial as the result of the cumulative effect of any errors. The first assignment of error is overruled.

### III. Sufficiency and Weight of the Evidence

#### A. Aggravated Robbery

{¶23} Mr. Bates's second assignment of error is that his convictions were against the weight and sufficiency of the evidence. He argues that his conviction for

aggravated robbery was based in large part on the testimony of Messrs. Chandler and Reliford, who, in Mr. Bates's view, did not give credible testimony. As to the sufficiency argument, our review of the record reveals that the state adduced substantial, credible evidence from which the jury could have reasonably concluded that the state had proved beyond a reasonable doubt the elements of complicity to aggravated robbery. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And our review of the entire record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Mr. Bates's conviction for aggravated robbery and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). It was for the jury to assess the witnesses' credibility and the video evidence.

### B. Weapon Under a Disability and Improper Handling of a Firearm

{¶24} Likewise, the state presented more than sufficient evidence to support the convictions for having a weapon while under a disability and improperly handling a firearm. As discussed above, Mr. Bates stipulated to his disability—a prior conviction for felony robbery. According to the testimony of Messrs. Chandler and Reliford, Mr. Bates possessed at least one gun, which he provided to them to carry out the robbery. Also, both Officer Mittermeier and Officer Bell testified that they saw a revolver in Mr. Bates's hand as they approached his car. Additional evidence of the improperly-handling-a-firearm offense was presented in testimony that a gun that had been provided by Mr. Bates was found in the waistband of his passenger. *See* R.C. 2923.16(B). Neither of the convictions was against the manifest weight of the evidence.

### C. Carrying a Concealed Weapon

{¶25} The conviction for carrying a concealed weapon, however, is a different matter. R.C. 2923.12(A)(2) makes it a crime for a person to "knowingly carry or have,

concealed on the person's person or concealed ready at hand" a handgun. A handgun is concealed if it is "so situated not to be discernible by ordinary observation by those near enough to see it if it were not concealed[.]" *State v. Davis*, 15 Ohio App.3d 64, 64-65, 472 N.E.2d 751 (1st Dist.1984), quoting *State v. Pettit*, 20 Ohio App.2d 170, 173-174, 252 N.E.2d 325 (4th Dist.1969). Here, the state presented no evidence that the gun was concealed. Officer Mittermeier testified that he saw the gun as he was approaching Mr. Bates's car, and that the gun then went "across the dashboard and then down behind the steering wheel." He later stated that he recovered the gun from the floor of the car. Missing from the testimony was any indication about whether the gun, as it lay on the floor of the car, was "so situated not to be discernible by ordinary observation." Absent this evidence, the state did not present sufficient evidence of the concealment element. Thus we sustain Mr. Bates's second assignment of error as it pertains to the carrying-a-concealed-weapon offense. That conviction is reversed. In respect to the other convictions, the second assignment of error is overruled.

## IV. Allied Offenses

{¶26} In his third assignment of error, Mr. Bates asserts that the court erred when it failed to merge his convictions as allied offenses. He contends that the trial court's imposition of separate sentences for each of the offenses violated the Double Jeopardy Clause of the Fifth Amendment, and the corresponding Double Jeopardy Clause of the Ohio Constitution, Article I, Section 10.

{¶27} The Double Jeopardy Clauses "protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 6, citing *North*

*Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Here, Mr. Bates argues that he was subjected to multiple punishments for the same offense. "However, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' " *Miranda*, *supra*, quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The question, then, is whether the legislature intended to permit multiple punishments for the offenses. *Id.* To answer that question, we look first to R.C. 2941.25. *Id.* at ¶ 7.

{¶28} Under R.C. 2941.25(A), a defendant may be convicted of only one of two or more allied offenses of similar import. But if the offenses are of dissimilar import or are committed separately or with a separate animus, the defendant may be convicted of all of them. R.C. 2941.25(B). Courts employ a two-prong test to determine if offenses are subject to merger. Under the first prong, courts must determine whether the offenses are of a similar import. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 13-15. In making this determination, a court must consider conduct of the accused. *Id.* at ¶ 15; *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. Under the second prong, a court must consider whether the offenses were committed separately or with a separate animus. *Washington* at ¶ 16. In other words, offenses will not merge if they were "committed separately," share a dissimilar import or were committed with a separate animus. *Id.* at ¶ 12.

{¶29} In *Miranda*, the court explained that " 'R.C. 2941.25 * * * is not the sole legislative declaration in Ohio on the multiplicity of indictments[,]' " and multiple punishments may be imposed when it is clear from an examination of the

statute of the offense that the legislature intended separate punishments. *Miranda* at ¶ 10. The concurring opinion emphasized that when the legislature intends separate punishments, the offenses are of dissimilar import. *Miranda* at ¶ 25-26 (Lanzinger, J., concurring). Offenses are of dissimilar import and separate punishment is intended where they "are not alike in their significance and their resulting harm." *Id.* at ¶ 25.

{¶30} Here, the weapons-under-a-disability charge is of a dissimilar import from the other offenses because the statute manifests a legislative purpose to punish the act of possessing a firearm while under a disability separately from any offense committed with the firearm. Thus, the offenses were not subject to merger.

{¶31} Further, even absent our analysis of their import, we would conclude that the offenses should not have merged here. The evidence submitted at trial demonstrates that the offenses were separately committed. The weapons-under-disability crime was established by testimony from Messrs. Reliford and Chandler that Mr. Bates provided them with firearms so that they could rob Mr. Johnson. Mr. Bates necessarily, then, possessed a gun while under a disability prior to the robbery. The subsequent aggravated robbery was a separate act in which Mr. Bates was complicit. Finally, the improperly-handling-a-weapon offense occurred later when Mr. Bates was stopped by the police with at least one gun ready at hand in his car following the robbery. The trial court did not err when it did not merge the convictions for sentencing. The third assignment of error is overruled.

{¶32} Mr. Bates's conviction for carrying a concealed weapon is reversed and he is discharged as to that count. We modify the sentencing entry to reflect the reversal of that conviction and the vacation of the sentence imposed on that count. Because the trial court ran the vacated sentence concurrent with the improper-handling-of-a-firearm

11

sentence, the aggregate sentence is unchanged.    In all other respects, the judgment of the trial court is affirmed.

Judgment accordingly.

**FISCHER, P.J.,** and **CUNNINGHAM, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.