[Cite as *State v. Dalmida*, 2015-Ohio-4995.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO. C-140517
                                                   TRIAL NO. B-1205478-B
    Plaintiff-Appellee,             :
                                                   *O P I N I O N.*
  vs.                                   :

GRADY DALMIDA,                          :

    Defendant-Appellant.            :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 4, 2015


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,


*Michele L. Berry*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**MOCK, Judge.**

{¶1}     Following a jury trial, Grady Dalmida was found guilty of aggravated robbery, robbery, having weapons while under disability, and two counts of felonious assault.  He was sentenced to 14 years imprisonment.

{¶2}     Dalmida advances the following arguments in this appeal: (1) his rights were violated with regard to the trial court's treatment of the photo-lineup procedures used, (2) the trial court erred when it did not give a jury instruction on noncompliance with photo-lineup procedures, (3) his rights were violated when the photo lineups were lost, (4) the court erred when it did not instruct the jury on the elements of constructive possession, (5) the indictment improperly charged the weapon-under-disability offense, (6) his conviction for having a weapon while under disability was based on insufficient evidence, (7) the lack of a jury instruction on constructive possession created a fatal variance between the indictment and the state's evidence, (8) the court erred by forcing Dalmida to wear his jail uniform during trial, (9) his trial counsel provided constitutionally ineffective assistance, and (10) the court erred by failing to merge allied offenses of similar import.

## I.  Background

{¶3}     George Hawkins was attacked in the parking lot behind his apartment by a man he recognized as Antonio Pryor.  Pryor exited from a white Chevy Impala, yelled at Hawkins, "Give me your money," and struck Hawkins in the head and face with a gun.  As the two men struggled for control of the gun, another man exited from the Impala and grabbed Hawkins from behind.  This second man was later identified as Grady Dalmida.  The struggle continued with Dalmida yelling orders to Pryor and demanding drugs and money from Hawkins.  Dalmida struck Hawkins repeatedly.  As the struggle

moved to the door of Hawkins's apartment, neighbors began throwing things from their windows and yelling for them to stop. Before fleeing, Dalmida told Pryor to shoot Hawkins. Pryor then shot Hawkins in the abdomen. Hawkins required an extensive surgery and two months of recovery.

{¶4} Dalmida was found lying on the ground behind a large trash can, wearing clothes that matched the description from 911 callers. He had Hawkins's blood on his shirt, and testing revealed lead and barium particles on his hands. As a result, detectives made a photo array, which they showed to Hawkins in the hospital. An officer read the "preparation form for a blind lineup" to Hawkins, and Hawkins identified Dalmida.

{¶5} Dalmida argued that Hawkins mistakenly identified him as an accomplice, when Dalmida attempted to help Hawkins before Pryor's actual accomplice arrived. He claimed that Pryor paid him for a ride, and that when Pryor attacked Hawkins, Dalmida grabbed Hawkins in order to stop the altercation. He stated that Pryor threatened to shoot him after Pryor had shot Hawkins. Dalmida admitted that he had lied about where he was and how the blood had gotten on his shirt when police arrested him. But after hearing all the evidence and testimony, the jury found him guilty of robbery, aggravated robbery, possession of a weapon while under disability, and two counts of felonious assault.

{¶6} Dalmida's various assignments of error can be distilled into three main issues: (1) what effect the loss of the original photo lineup has on the case, (2) whether the facts of this case as demonstrated in the record support a conviction for the offense of having a weapon while under disability, and (3) whether any of Dalmida's convictions should have been merged.

## II. Photo Lineup

{¶7} Dalmida's first three assignments of error essentially argue that his constitutional rights were violated when the photo-lineup procedures were not followed and the original lineups were lost.

{¶8} R.C. 2933.83 requires law enforcement to use specific procedures for conducting lineups. This includes using a blind administrator, maintaining written records of the names, dates, and witnesses involved, and informing the eyewitnesses that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is. R.C. 2933.83(B)(1)–(5). Dalmida argues that the lineups and procedures were unduly suggestive and generated an unreliable identification. To support his argument, he points to the officer's failure to obtain a contemporaneous confidence statement from Hawkins, and that Hawkins had viewed Dalmida's picture on the news as a suspect two or three times prior to the lineup. The trial court considered all of this information during the motion to suppress and stated that the lineup was not unduly suggestive.

{¶9} The statute provides that the individual conducting the lineup must make a written record that includes, among other information, the "identification and nonidentification results obtained during the lineup, signed by the eyewitnesses, including the eyewitnesses' confidence statements made immediately at the time of identification." R.C. 2933.83(B). And the record contains no indication that a contemporaneous confidence statement was procured, or that the jury was instructed on the failure to obtain such a statement.

{¶10} However, an alleged violation of R.C. 2933.83 alone is not a valid basis for suppression of identification testimony. *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 8. Instead, cross-examination regarding the procedures used

is the proper remedy. *Id.* A trial court will suppress identification testimony when the identification procedure used "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Woods*, 1st Dist. Hamilton Nos. C-130413 and C-130414, 2014-Ohio-3892, ¶ 25, quoting *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Because the question of whether identification testimony is admissible is based on reliability, if the identification is reliable it is admissible even if the identification procedure was suggestive. *Woods* at ¶ 25. The defendant bears the burden of proving (1) that the procedures used were both suggestive and unnecessary and (2) that the testimony was or will be unreliable under the totality-of-the-circumstances test. *State v. Brown*, 1st Dist. Hamilton No. C-930217, 1994 Ohio App. LEXIS 3560, *32 (Aug. 17, 1994). Additionally, Dalmida forfeited any argument with regard to the suggestiveness of the photographs, because trial counsel objected only to the identification process, not the photographs. Under the plain-error standard, an appellate court will reverse a judgment only where the outcome clearly would have been different absent the alleged error. *State v. Miller*, 1st Dist. Hamilton No. C-070691, 2008-Ohio-5899, ¶ 22.

{¶11} Dalmida complains that the jury should have been instructed on the officer's noncompliance with the identification statute, but since Dalmida never requested a jury instruction on that matter, and did not object to the jury instructions given at trial, this issue is also reviewed for plain error. *See* Crim.R. 30(A); *State v. Dixson*, 1st Dist. Hamilton No. C-030227, 2004-Ohio-2575, ¶ 21. He contends the failure to give this unrequested jury instruction is highly prejudicial, because this case hinged entirely on a single eyewitness's testimony. But we disagree. The state called nine witnesses and admitted eight pieces of evidence. Further, when asked at the motion-to-suppress hearing, Hawkins stated that he was 100 percent certain his

5

identification was correct. The defendant had the victim's blood on his shirt and contradicted himself as to how the blood got there. The court held a hearing on the motion to suppress the identification and found that nothing warranted suppression.

{¶12} The only case Dalmida cites to support his contention that the loss of evidence warrants reversal is *State v. Harper*, 1st Dist. Hamilton No. C-130134, 2013-Ohio-5217. But there, this court found that because the officer deferred to the video in his testimony, without the DVD recording of the events the record lacked sufficient evidence to convict the defendant of resisting arrest. Here, the record indicates neither side ever offered the photo arrays into evidence. Since they were never admitted, the lineups would never be part of the appellate record. *See* App.R. 9(A)(1); *State v. Zhovner*, 3d Dist. Auglaize No. 2-12-13, 2013-Ohio-749, ¶ 11.

{¶13} We find no merit in Dalmida's first three assignments of error, and therefore, overrule them.

### III. Weapons Under Disability

{¶14} In his fourth, fifth, sixth, and seventh assignments of error, Dalmida essentially argues his conviction for having weapons under disability violated his constitutional rights, because the evidence was insufficient, he was not properly indicted, and the jury was not properly instructed on constructive possession. At issue here is whether Dalmida was convicted of having weapons under disability because of his disability, since Pryor was the only person who actually held and fired the gun.

{¶15} A person who has been convicted of felony-drug possession is not permitted to knowingly acquire, have, carry, or use any firearm or dangerous ordnance, unless relieved from that disability. R.C. 2923.13(A)(3). Neither party disputes that it was Pryor who possessed the firearm, which he used to assault, rob, and shoot Hawkins.

{¶16}   An accomplice can be convicted of having weapons under disability without holding the firearm if that accomplice aided and abetted the person who actually possessed and brandished the firearm. *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478; *State v. Lewis*, 8th Dist. Cuyahoga No. 81957, 2003-Ohio-3673. A nonshooting accomplice can be convicted for having weapons under disability based on that accomplice's disability, not the disability of the shooter. *Adams* at ¶ 18; *contra State v. Lewis*, 2d Dist. Greene No. 96CA12, 1997 Ohio App. LEXIS 1316 (April 4, 1997) (holding that in order to aid and abet another person in having a weapon under disability, the individual who actually possesses the firearm must be the one with the disability, not the aider and abetter). The accomplice can have constructive possession of the firearm by exercising dominion and control through another. *See State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). The record demonstrates that Dalmida had a prior felony conviction, was aware that Pryor possessed the firearm, and directed Pryor to use the firearm to shoot Hawkins.

{¶17}   The jury was instructed on both having a weapon under disability and complicity. Dalmida stipulated that he had a prior felony conviction and the state presented evidence that, while Pryor was the only person to actually possess and fire the gun, Dalmida actively participated in the robbery, yelled orders at Pryor, and instructed Pryor to shoot Hawkins. Further, because Dalmida never requested a jury instruction on constructive possession and did not object to the jury instructions given at trial, this issue must be reviewed under the plain-error standard. *See* Crim.R. 30(A); *Dixson*, 1st Dist. Hamilton No. C-030227, 2004-Ohio-2575, at ¶ 21. Dalmida has not demonstrated that the outcome of his trial would have been different if the jury had been instructed on constructive possession.

{¶18}   Dalmida also claims the indictment was improper, because it charged him individually for having a weapon under disability when the state's theory was actually based on complicity.  But, as the state points out, "A charge of complicity may be stated in terms of [the complicity statute itself] or in terms of the principal offense."  R.C. 2923.03(F).  That statute "adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense."  *State v. Herring*, 94 Ohio St.3d 246, 251, 762 N.E.2d 940 (2002).  Thus, a defendant charged with an offense may be convicted on proof that he was complicit in its commission, even if the indictment describes the offense in terms of the principal offense and does not mention complicity.

{¶19}   Dalmida was aware that he had a disability and was not supposed to have a firearm.  He possessed the firearm by actively participating in the robbery and directing Pryor to shoot Hawkins.  Therefore, Dalmida's fourth, fifth, sixth, and seventh assignments of error are overruled.

## IV.    Jail Uniform

{¶20}   In his eighth assignment of error, Dalmida claims the trial court erred by "forcing him to stand trial before a jury while wearing his jail uniform."

{¶21}   Nothing in the record indicates that Dalmida requested and was denied a recess or continuance in order to obtain different clothing.  Further, the portions of the record Dalmida identifies as evidence that he "made clear on the record that he did not wish to appear in his jail uniform," include the judge telling prospective jurors to ignore the fact that Dalmida was wearing "garb from the Justice Center."  The other is a statement Dalmida made at sentencing, which is obviously after the trial had been completed.  There is no evidence that Dalmida ever objected or communicated that he wanted different clothing until sentencing.  Therefore, the standard here is plain error.

Because the judge told the jurors to disregard the fact that Dalmida was wearing his jail uniform, this court must presume the jurors followed those instructions. *See State v. Fears*, 86 Ohio St.3d 329, 334, 715 N.E.2d 136 (1999). Dalmida's eighth assignment of error is overruled.

## V. Ineffective Assistance

{¶22} In his ninth assignment of error, Dalmida contends his trial counsel provided constitutionally ineffective assistance of counsel. To succeed on his claim of ineffective assistance of counsel, Dalmida must show that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense such that he was denied a fair trial. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1985), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 67 (1984). Dalmida claims his trial counsel's performance fell below an objective standard of reasonableness when he failed to present evidence regarding law enforcement's failure to follow the photo-lineup procedure, present evidence that Hawkins had identified another suspect, admit the photo lineups into evidence, request a jury instruction on law enforcement's failure to follow the photo-lineup procedure, object to the jury instructions and/or indictment regarding the charge of having a weapon while under disability, object to Dalmida appearing at trial in his jail uniform, and object to the court's improper sentence.

{¶23} But Dalmida does not explain how these failures fell below the objective standard of reasonableness or how he has been prejudiced. Counsel extensively cross-examined the officers with regard to the steps taken in the photo lineup. The trial court merged several of the counts at sentencing, demonstrating that the court performed a merger analysis and determined which counts it believed should merge. Importantly, Dalmida has failed to demonstrate "a reasonable probability that, were it not for

counsel's errors, the result of the trial would have been different." *See Bradley* at 142. Therefore, Dalmida's ninth assignment of error is overruled.

## VI.    Merger

{¶24}    In his tenth assignment of error, Dalmida claims that the trial court erred by convicting him of multiple offenses based on the same conduct, because the offenses should have been merged.   Under R.C. 2941.25, offenses merge when the defendant's conduct can be construed to constitute two or more allied offenses of similar import, and the conduct establishes that the offenses were not committed separately or with a separate animus.

{¶25}    To determine whether allied offenses merge under R.C. 2941.25, courts must consider the conduct, the animus, and the import.  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus.  The Ohio Supreme Court recently explained that an "allied-offenses analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct."  *Ruff* at ¶ 26.  A defendant can be convicted of multiple offenses for the same conduct if any one of the following is true: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at ¶ 25.

{¶26}    Dalmida maintains that the felonious-assault, having-weapons-under-disability, and aggravated-robbery counts merge, because the convictions are based on his sole conduct of acting in concert with Pryor to assault Hawkins with a firearm.  The court merged the robbery with the aggravated robbery, and merged the two felonious assaults.  Because this case involved only one victim, in looking at Dalmida's conduct, we must answer the following questions: (1) are the offenses dissimilar in import, in other

words, whether the harm that resulted from the aggravated robbery, felonious assault, and having weapons under disability was separate and identifiable, (2) whether the offenses were committed separately, or (3) whether the offenses were committed with separate animus or motivation. If we answer any one of the three questions in the affirmative then the offenses are not allied offenses and are not subject to merger. *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 83.

### A. Merger of Felonious Assault with Aggravated Robbery

{¶27} The record is clear that the aggravated robbery and felonious assault were committed separately. To adequately examine whether the offenses are subject to merger, we must look at Dalmida's conduct in the context of the statutory elements.

{¶28} The pertinent aggravated robbery statute, R.C. 2911.01(A)(1), provides that,

> No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

The relevant felonious assault statute, R.C. 2903.11(A)(2), provides that, "No person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶29} The use of a gun to rob Hawkins satisfies the elements of aggravated robbery. Pryor displayed the gun and both Dalmida and Pryor demanded drugs and money from Hawkins. After Hawkins told Dalmida and Pryor that he did not have any drugs or money, Dalmida and Pryor ripped the pockets off Hawkins's pants. Finding no drugs or money, they took his cell phone. Then, Dalmida told Pryor to shoot Hawkins.

11

Shooting Hawkins was not in furtherance of the aggravated robbery, because the robbery had already been completed. Thus, because the aggravated robbery and felonious assault were committed with separate conduct, the offenses do not merge.

### B. Merger of Weapons Under Disability with Felonious Assault and Aggravated Robbery

{¶30} Dalmida's constructive possession of the firearm is sufficient to meet the weapons-under-disability statute. However, Dalmida claims the weapons-under-disability count is an allied offense of similar import that must merge with the aggravated robbery and felonious assault. We disagree.

{¶31} The relevant weapons-under-disability statute, R.C. 2923.13(A)(3), provides that a person who has been convicted of a felony involving illegal drug possession, shall not "knowingly acquire, have, carry, or use any firearm or dangerous ordnance."

{¶32} Offenses are of dissimilar import if the harm that results from each offense is separate and identifiable. *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26; *see State v. Earley*, __ Ohio St.3d __, 2015-Ohio-4615, __ N.E.3d __, ¶ 15. This court has previously held that having weapons while under disability is of a dissimilar import from other offenses "because the statute manifests a legislative purpose to punish the act of possessing a firearm while under a disability separately from any offense committed with the firearm." *See State v. Bates*, 1st Dist. Hamilton No. C-140033, 2015-Ohio-116, ¶ 30. The underlying purpose of criminalizing having weapons while under disability is to protect the general public from the increased risk of harm of armed criminals. *See State v. Rice*, 69 Ohio St.2d 422, 427, 433 N.E.2d 175 (1982).

{¶33}    The offenses of aggravated robbery and felonious assault have different import and significance than merely having a weapon while under disability.   The offense of having a weapon while under disability occurs when a person who is under indictment for or has been convicted of a felony offense of violence or involving illegal drugs, acquires, has, carries, or uses a firearm.  R.C. 2923.13(A).  This import is separate and identifiable both from Dalmida's use of the gun to relieve Hawkins of his property and his use of the gun to cause Hawkins physical harm.   Therefore, we hold that the harm that resulted from each offense was separate and identifiable, and, thus, the offenses do not merge. Dalmida's tenth assignment of error is overruled.

### VII. Conclusion

{¶34}    We affirm the trial court's judgment.

Judgment affirmed.


**CUNNINGHAM, P.J.,** and **STAUTBERG, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.